25CA2105 Marriage of Acharya 07-02-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA2105
City and County of Denver District Court No. 25DR161
Honorable Michael W. V. Angel, Judge

---

In re the Marriage of

Hema Devi Acharya,

Appellant,

and

Som Prasad Giri,

Appellee.

---

JUDGMENT AFFIRMED

Division IV
Opinion by JUDGE WELLING
Schock and Lum, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced July 2, 2026

---

Hema Devi Acharya, Pro Se

Som Prasad Giri, Pro Se

¶ 1     In this dissolution of marriage case between Hema Devi Acharya (wife) and Som Prasad Giri (husband), wife appeals the portions of the district court's permanent orders concerning the marital property division.  We affirm.

## I.     Background

¶ 2     In 2025, the district court dissolved the parties' marriage of approximately ten years.  Following a short permanent orders hearing, the court disproportionately divided the parties' marital estate, including negative equity, in wife's favor.

¶ 3     The primary point of contention during the permanent orders hearing was the status of a house in Nepal.  Husband testified that the Nepal house was owned by his mother and titled solely in her name, although he acknowledged that the parties had, at times, jointly remitted funds to his mother to help her purchase the house. The court also admitted into evidence a document that husband testified was a loan statement showing his mother as a borrower for a mortgage on the Nepal house.

¶ 4     Conversely, wife testified that she only agreed to send money to help husband's mother in Nepal based on her understanding that the Nepal house, which was purchased in 2019, belonged to the

1

parties, with husband's mother simply residing there. Wife's sister also testified that the parties had taken out, and since repaid, a loan from her with the intent to purchase a house in Nepal. Husband denied that the parties had borrowed any money to purchase the house in Nepal and instead testified that any money they had borrowed from family members had been for the purchase of their marital home in Colorado.

¶ 5 The district court resolved the dispute concerning the Nepal house in husband's favor, finding that although "significant marital resources were used on the Nepal property, this equated to a gift to [husband]'s Mother and the Court finds the Nepal property is [husband]'s Mother's separate property." The court thus declined to divide the Nepal house because it is "not marital property nor is it subject to marital division."

¶ 6 Wife subsequently filed a motion under C.R.C.P. 59 asking the district court to set a new hearing or otherwise reconsider its findings as to the Nepal house and the division of the marital estate. But the district court denied wife's motion, stating that, "after considering all the evidence, and applying the preponderance of the evidence standard, [it] did not find . . . evidence that the

2

home in Nepal constituted marital property." The court explained that it had "ultimately determine[d] the weight to give the evidence, as well as the credibility of the witnesses," and emphasized that it had "found [that] the [Nepal] home did not consist of marital property and any contributions of marital funds towards the home constituted a gift to [the] mother of [husband]." Wife appeals.

## II.    Standards of Review and Applicable Law

¶ 7    A property division requires two steps: first, the court determines whether an interest constitutes "property," and then, if so, whether it's marital or separate property. *In re Marriage of Balanson*, 25 P.3d 28, 35 (Colo. 2001). The court must set aside each spouse's separate property and then divide the marital property. § 14-10-113(1), C.R.S. 2025. Under section 14-10-113, subject to certain listed exceptions, all property acquired by either spouse during the marriage is presumed marital. *Balanson*, 25 P.3d at 35.

¶ 8    The classification of property as marital or separate is a legal determination that is based on the district court's factual findings. *In re Marriage of Morton*, 2016 COA 1, ¶ 5. While we independently review issues of law, *see id.*, we review the court's factual findings

3

for clear error, meaning that we won't disturb them unless they are unsupported by the record, *Martinez v. Mintz Law Firm, LLC*, 2016 CO 43, ¶ 17. And the court has great latitude to equitably distribute the marital estate based upon the facts and circumstances of the case, and we won't disturb its decision absent a clear abuse of discretion. *Balanson,* 25 P.3d at 35. A district court abuses its discretion when it acts in a manifestly arbitrary, unreasonable, or unfair manner, or when it misapplies the law. *In re Marriage of Boettcher*, 2018 COA 34, ¶ 6, *aff'd,* 2019 CO 81.

III.   The District Court's Treatment of the Nepal House

¶ 9      Wife challenges the district court's finding that the Nepal house belonged to husband's mother and therefore was not in any way divisible as part of the marital estate on multiple grounds. We perceive no error.

A.   Applicable Evidentiary Standard

¶ 10     Wife first contends that the district court erred because, when determining that the Nepal house belonged to husband's mother, the court applied the wrong evidentiary standard. Specifically, wife argues that the court's findings should have been based on clear and convincing evidence, but instead, as explained by the court

when denying wife's postjudgment motion, it applied the less onerous preponderance of the evidence standard. We reject wife's argument because it's based on a misunderstanding of the court's findings.

¶ 11    While the district court imprecisely used the phrase "separate property" when it found that the Nepal house belonged to husband's mother, it's apparent to us that the district court in effect found that the house was presently the property of a third party and, therefore, not part of the marital estate. Indeed, under section 14-10-113, "separate property" is a term that only applies to property owned by one of the two parties to the proceeding at the time of the permanent orders hearing. *See* § 14-10-113(1) (directing the court to "set apart to each spouse *his or her property* and . . . divide the marital property" (emphasis added)); § 14-10-113(1)(d) (directing the court to consider "[a]ny increases or decreases in the value of the separate property *of the spouse* during the marriage" (emphasis added)); *cf.* § 4-10-113(5) (directing the court to value property "as of . . . the date of the hearing on disposition of property").

¶ 12    Instead, by finding that the Nepal house belonged to husband's mother, the district court effectively found that under the first step of the property division inquiry, *see Balanson*, 25 P.3d at 35, neither party had a property interest in the Nepal house. *Cf. id.* at 39 (whether a party has an enforceable right to a particular asset determines that asset's status as property). And once the district court made that determination, the court's inquiry under section 14-10-113 ended because it couldn't then classify and allocate an asset that belonged to neither party. *See Balanson*, 25 P.3d at 38 (recognizing that only when the district court determines that an interest constitutes property must it classify that property as marital or separate); *see also In re Marriage of Lockwood*, 971 P.2d 264, 267 (Colo. App. 1998) ("Only the marital property existing at the time of dissolution was available for distribution."); *In re Marriage of Schmedeman*, 190 P.3d 788, 791-92 (Colo. App. 2008) (court couldn't classify and then divide as marital property a log cabin that had been given by husband to his parents during the marriage).

¶ 13    Therefore, while wife cites cases such as *In re Marriage of Vittetoe*, 2016 COA 71, ¶ 18, which she contends required the

district court to find that the Nepal house was the "separate property" of husband's mother by clear and convincing evidence, such cases are inapplicable here. Specifically, those cases concern the application of a heightened evidentiary standard to the second step of a marital property division involving the determination of whether a particular interest, *which the court has already determined to be the property of one of the parties*, was to be treated as marital or separate property. *See id.* at ¶ 37 (directing the district court on remand to make findings as to whether a house that was titled in the wife's name had been gifted by a third party to the marriage, or was, by clear and convincing evidence, the wife's separate property); *see also In re Marriage of Krejci*, 2013 COA 6, ¶ 9 (directing the district court on remand to presume that the payoff of the outstanding mortgage on the parties' jointly-titled home by the wife's mother was a gift to the marriage, and thus marital property, absent clear and convincing evidence to the contrary).

¶ 14 But wife has not cited, nor are we aware of, any cases applying such a heightened evidentiary standard to a district court's initial determination of whether a particular interest constituted the

property of one of the parties in the first place.  *See Balanson*, 25 P.3d at 35.  Thus, we remain unpersuaded that the court erred when it determined, using the less rigorous preponderance of the evidence standard, that the Nepal house was the property of a nonparty, namely husband's mother.  *See* § 13-25-127(1), C.R.S. 2025 (providing that the burden of proof in a civil action is generally a preponderance of the evidence).

B.  The District Court's Findings Concerning the Ownership of the Nepal House and the Parties' Contributions to the Home

¶ 15     Wife next asserts that the district court erred when it found that (1) the Nepal house wasn't owned by husband or the parties but was instead owned by his mother, and (2) any marital funds that the parties contributed towards his mother's purchase of the Nepal house were a gift.  But because wife effectively asks us to reweigh the evidence in her favor, which we may not do, we are unpersuaded.

¶ 16     As an initial matter, our review of wife's contentions is hampered by the lack of a transcript of the district court's July 15, 2025, oral findings and ruling, which the court then expressly incorporated into the written permanent orders.  As the appellant, it

8

was wife's responsibility to designate the record and to ensure that all items designated were transmitted to the appellate court. *In re Marriage of Tagen*, 62 P.3d 1092, 1096 (Colo. App. 2002). Therefore, wife was required to "include in the record transcripts of all proceedings necessary for considering and deciding the issues on appeal." C.A.R. 10(d)(3). Where an appellant fails to include the necessary portions of the record, we must presume that the missing record supports the judgment. *See In re Marriage of Dean*, 2017 COA 51, ¶ 15; *cf. People v. Wells*, 776 P.2d 386, 390 (Colo. 1989) (reviewing court cannot conclude that the district court's judgment is erroneous when the record is insufficient).

¶ 17    Consequently, to the extent that wife argues that the district court made insufficient findings in support of its conclusion that the Nepal house was owned by husband's mother and any marital funds transferred to his mother were a gift, we must presume that the missing transcript contains any necessary findings. *See Dean*, ¶ 15.

¶ 18    And we otherwise see no reason to disturb the district court's findings. Critically, it was for the district court to determine the credibility of the witnesses and the weight, probative force, and

sufficiency of the evidence, as well as the inferences and conclusions to be drawn therefrom. *In re Marriage of Thorburn*, 2022 COA 80, ¶ 49. Therefore, "[t]he [district] court c[ould] believe all, part, or none of a witness's testimony, even if uncontroverted, and its resolution of conflicting evidence is binding on review," *In re Marriage of Amich*, 192 P.3d 422, 424 (Colo. App. 2007), meaning that even where "there is evidence in the record that could have supported a different conclusion, we will not substitute our judgment for that of the district court," *In re Marriage of Nelson*, 2012 COA 205, ¶ 35.

¶ 19 Husband testified that his mother owned the Nepal house, the property was titled solely in her name, and that the parties had "both agreed to send the money to help my mom out in Nepal" and "both agreed to buy the house for my mom." Moreover, husband introduced a loan statement showing his mother as the sole borrower on the Nepal house. The district court was free to credit the evidence presented by husband on these issues, and thus we can't say that its findings as to the house and the funds sent by the parties to husband's mother were clearly erroneous. *See Martinez*, ¶ 17; *Thorburn*, ¶ 49.

¶ 20    Still, wife asks us to disturb the district court's findings as to the status of the Nepal house and the nature of the funds that the parties had remitted to husband's mother in Nepal. In support, she argues that husband's testimony was internally inconsistent and contends that the district court's findings are undermined by the countervailing testimony of both her and her witnesses. But because it was for the district court to resolve such conflicting evidence, we won't second-guess the court's credibility determinations or otherwise reweigh the evidence in wife's favor. *Thorburn*, ¶ 49; *see also People in Interest of A.J.L.*, 243 P.3d 244, 249-56 (Colo. 2010) (reversing when appellate court "improperly substituted its judgment for that of the trial court regarding the credibility of witnesses and the weight, sufficiency, and probative value of the evidence").

## C.    Economic Fault and Dissipation

¶ 21    For similar reasons, we aren't persuaded by wife's contention that the district court erred when it refused to credit the marital estate, under the related concepts of economic fault and the dissipation of marital assets, for either the value of the Nepal house

11

or the funds that were remitted by the parties to husband's mother during the marriage.

¶ 22    "Economic fault" is a limited concept that comes into play only in extreme cases, such as the spouse's dissipation of marital assets in the contemplation of divorce. *In re Marriage of Hunt*, 909 P.2d 525, 542 (Colo. 1995); *see also In re Marriage of Finer*, 920 P.2d 325, 331 (Colo. App. 1996) (dissipation refers to a spouse's expenditures of marital funds for illegitimate purposes). But a court may not consider an asset to have been dissipated unless it first finds that a party disposed of the asset improperly. *In re Marriage of Riley-Cunningham*, 7 P.3d 992, 995 (Colo. App. 1999) ("Even though the funds in question were marital property, inasmuch as there was no showing that they were used improperly or for illegitimate purposes, there was no basis for valuation or distribution of an asset that was not shown to exist at the time of the decree.").

¶ 23    Wife's theories of economic fault and dissipation appear to rest on her assertion that either (1) the Nepal house was at one point titled in husband's name and was surreptitiously transferred to his mother, or (2) when remitting money to husband's mother in Nepal,

husband misrepresented to wife that the Nepal house would be owned by the parties.

¶ 24    Again, the district court was free to credit husband's testimony that the Nepal house was his mother's property and that the parties had both agreed to send money to Nepal to help her with the purchase of the home. *See Thorburn*, ¶ 49. Similarly, the district court was free to disbelieve wife's countervailing suggestions that the house had at one point been in husband's name and was then improperly transferred to his mother or that husband had otherwise deceived wife when the parties agreed to send funds to his mother in Nepal. *See Amich*, 192 P.3d at 424.

¶ 25    Indeed, when denying wife's postjudgment motion, the district court explained that it had ultimately resolved the issues related to the Nepal house after having "determine[d] the weight [of] the evidence, as well as the credibility of the witnesses." Thus, it appears that the district court implicitly rejected wife's contention that husband had disposed of any marital assets improperly, and we see no basis to disturb its ruling. *See People in Interest of C.L.T.*, 2017 COA 119, ¶ 36 (recognizing that the court's findings may be implicit in its ruling); *Riley-Cunningham*, 7 P.3d at 995.

## IV.  Equitable Division of the Marital Estate

¶ 26    Wife lastly asserts that the district court abused its discretion because it inequitably distributed the parties' assets and debts under section 14-10-113.  We disagree.  Wife's assertion in this regard is based on the same arguments that we have already rejected concerning the court's classification of the Nepal house, the court's credibility determinations and resolution of conflicting evidence, and wife's claims of economic fault and dissipation.  We reject this last contention for the same reasons.

## V.  Appellate Costs

¶ 27    Husband requests an award of his appellate costs.  Because we affirm the judgment, costs are taxed against wife.  *See* C.A.R. 39(a)(2).  Husband may seek to recover his costs against wife in the district court by following the procedure set forth in C.A.R. 39(c).

## VI.  Disposition

¶ 28    The judgment is affirmed.

JUDGE SCHOCK and JUDGE LUM concur.